[No. 32837. *En Banc.* October 21, 1954.]

GORDON JOHNSON, *Appellant,* v. MAMIE ROSE OTTOMEIER, *as Executrix, Respondent.*[1]

[1] Reported in 275 P. (2d) 723.

*Wilmot W. Garvin* and *Donald J. Crawford*, for appellant.
*Caruso & Spinelli*, for respondent.

HAMLEY, J.—Where a husband murders his wife and then commits suicide, leaving children, does the wife's personal representative have a cause of action against the husband's estate, for the benefit of the children, under the wrongful death act of this state? The trial court said "no."

The case comes to us in this way: Antone J. Ottomeier murdered his wife, Anna C. Ottomeier, and, within minutes thereafter, committed suicide. Mamie Rose Ottomeier was appointed executrix of each estate. Gordon Johnson, a surviving son of Anna C. Ottomeier, petitioned the court to remove Mamie Rose Ottomeier as executrix of the estate of Anna C. Ottomeier, and to appoint petitioner as administrator with the will annexed of such estate. He alleged, in this petition, that, by reason of Antone J. Ottomeier's wrongful act in killing his wife, a cause of action had accrued to the latter's estate which Mamie Rose Ottomeier, being executrix of both estates, could not institute. The petition was dismissed, and Gordon Johnson appeals.

In support of the judgment, respondent reasons: (1) A wife cannot sue her husband for a tort committed against her person during coverture; and (2) this defense is available to the estate of the tort-feasor under the rule that, in an action for wrongful death, the defendant is entitled to the benefit of all defenses he would have had to an action by the deceased had she lived.

■ In our view, the general exclusionary rule referred to under (2) above has no application to defenses based upon personal disability to sue, as distinguished from defenses which inhere in the tort, or which are based upon decedent's course of conduct after the injury and before death.

Our wrongful death act, in so far as here pertinent, reads as follows:

"When the death of a person is caused by the wrongful act, neglect, or default of another, his personal representative may maintain an action for damages against the person causing the death; and although the death was caused under such circumstances as amount, in law, to a felony. . . ." RCW 4.20.010 [cf. Rem. Rev. Stat., § 183].

"Every such action shall be for the benefit of the wife, husband, child or children of the person whose death is so caused. . . ." RCW 4.20.020 [cf. Rem. Rev. Stat., § 183-1].

It will be observed that there is no language in the above-quoted act which specifically bars an action against a spouse or his estate for causing the death of the other spouse. Nor does the act contain any general exclusionary provision from which such a specific rule can be derived. This is conceded by respondent.

But respondent urges that this court has "read" into the act a general exclusionary rule which is so broad that it must be held to bar an action against a husband or his estate, brought by the wife's personal representative.

It is true that, in construing this act, we have held that the action may be maintained "where the deceased might have maintained it had he lived." *Welch v. Creech*, 88 Wash. 429, 435, 153 Pac. 355. Or, as we stated in *Ostheller v. Spokane & Inland Empire R. Co.*, 107 Wash. 678, 182 Pac. 630, the action is "dependent upon the right the deceased would have to recover for such injuries up to the instant of his death." (p. 681)

■ But the language we use in our decisions must always be appraised in the light of the facts of the particular case and the specific issues which were before the court.

The decisions in which we have announced and applied this rule of exclusion fall into two categories. First, there are those cases in which the defense asserted inhered in the tort itself. *Welch v. Creech, supra,* in which the defense was self-defense; *Ostheller v. Spokane & Inland Empire R. Co., supra,* in which the defense was that the contributory negligence of the husband of the decedent was attributable to the community; *Hart v. Geysel,* 159 Wash. 632, 294 Pac. 570, in which the defense was decedent's consent to engage in a prize fight; and *Ryan v. Poole,* 182 Wash. 532, 47 P. (2d) 981, in which the defense was that decedent was engaged in unlawful and criminal acts at the time he met his death.

The statutory basis for recognizing defenses of this character is to be found in the word "wrongful," as used in the statute. If the tort-feasor breached no duty owing to decedent, or if decedent proximately contributed, through consent, negligence, or unlawful acts, to his own injury, it is reasonable to say that his death was not wrongful in the contemplation of the statute. See *Ostheller v. Spokane & Inland Empire R. Co., supra,* page 681; *Northern Pac. R. Co. v. Adams,* 192 U. S. 440, 48 L. Ed. 513, 24 S. Ct. 408, as quoted in *Welch v. Creech, supra.*

In *Upchurch v. Hubbard,* 29 Wn. (2d) 559, 188 P. (2d) 82, this court indicated that a defense based on the host-guest statute would be available in a wrongful death action. However, it was held that the decedent was not a guest of the tort-feasor at the time of the accident, and so judgment for the plaintiff was affirmed. The defense there urged is statutory in character, rather than being based upon common-law principles. It does, however, pertain to the tort-feasor's duty of care, rather than to any matter of personal disability. For this reason, *Upchurch* is properly to be regarded as falling within the category of cases referred to above.

The second category of cases in which this general rule of exclusion has been applied involves situations in which, after receiving the injuries which later resulted in death, the decedent pursued a course of conduct which makes it inequitable to recognize a cause of action for wrongful

death. Among such cases are *Brodie v. Washington Water Power Co.*, 92 Wash. 574, 159 Pac. 791, where decedent gave an effective release and satisfaction; and *Calhoun v. Washington Veneer Co.*, 170 Wash. 152, 15 P. (2d) 943 (as interpreted in *Grant v. Fisher Flouring Mills Co.*, 181 Wash. 576, 44 P. (2d) 193), where the statute of limitations had run prior to decedent's death.

The wrongful death statute itself and generally recognized equitable principles sanction the recognition of such defenses as have been dealt with in all of the cases cited above. But what statutory language or what principle of law or equity warrants the recognition of the wife's personal disability to sue her husband as defense against her personal representative's action for wrongful death?

As before indicated, respondent concedes that there is no express statutory language supporting such a view. A consideration of the general scope and purpose of such statutes convinces us that no such limitation can be said to inhere therein.

We start, of course, with the general rule of statutory construction that, being remedial in nature, this statute is to be liberally construed. *Whittlesey v. Seattle*, 94 Wash. 645, 163 Pac. 193; *Cook v. Rafferty*, 200 Wash. 234, 93 P. (2d) 376.

It was originally the common view that Lord Campbell's Act, 9 and 10 Vict., c. 93, § 1, which first established the right to sue for wrongful death, provided for the survival of a cause of action possessed by the deceased. It is now generally recognized, however, that the act gives to the heirs, or the personal representative on their behalf, a new right of action. Our court accepts this view. *Brodie v. Washington Water Power Co.*, *supra*; *Ostheller v. Spokane & Inland Empire R. Co.*, *supra*; *Upchurch v. Hubbard*, *supra*.

Not having as its basis a survival statute, the action for wrongful death is derivative only in the sense that it derives from the wrongful act causing the death, rather than from the person of the deceased. *Welch v. Davis*, 410 Ill. 130, 101 N. E. (2d) 547, 28 A. L. R. (2d) 656; *Kaczorowski v. Kalkos-*

*inski,* 321 Pa. 438, 184 Atl. 663, 104 A. L. R. 1267. Needless to say, the wife's disability to sue is personal to her, and does not inhere in the tort itself. *Deposit Guaranty Bank & Trust Co. v. Nelson,* 212 Miss. 335, 54 So. (2d) 476.

■ The wife's personal disability necessarily disappears with her death, and hence is not transferable to the personal representative, who has a new cause of action. Whether, as in this state, the disability is based upon the supposed unity of husband and wife (*Schultz v. Christopher,* 65 Wash. 496, 118 Pac. 629), or, as in some states, on the public policy of preserving peace and tranquility in the home, the reason for the immunity no longer exists when one spouse is dead. See *Deposit Guaranty & Trust Co. v. Nelson, supra; Rodney v. Staman,* 371 Pa. 1, 89 A. (2d) 313. Here, both spouses are dead, and at the hand of him whose representative asserts that the immunity survives.

The courts elsewhere are divided on the precise question now before us. In Prosser on Torts, published in 1941, the author, while expressing a strong preference for the view advanced in this opinion, characterized it as the minority view. Prosser on Torts, 966, § 103. In an annotation on this question by E. LeFevre, appearing in 28 A. L. R. (2d) 662 *et seq.,* published in 1953, it is stated that it appears to be the recent and well-reasoned trend of the courts to allow recovery against a husband in an action of this kind. 28 A. L. R. (2d) 662, 666.

That the trend is in this direction is confirmed by the fact that the jurisdictions which permit such action now appear to be in the majority. See cases cited in the above A. L. R. annotation. In this A. L. R. annotation, the author makes this pertinent observation:

"In a well-reasoned opinion the Pennsylvania court in *Kaczorowski v. Kalkosinski* (1936) 321 Pa 438, 184 A 663, 104 ALR 1267, infra, § 3, under heading 'Action by parent of deceased spouse,' took what appears to be the most logical approach, adopting the view that the wrongful death statute created a right derived from the tortious act, rather than from the person of the deceased. This eliminated the problem of the immunities present in the relationship of the de-

ceased and the tortfeasor, since the right of action passes to the beneficiaries free from such immunities. There appears to be no ground in logic for invoking the immunity of one spouse from suit by the other in order to prevent recovery against the spouse who has caused the death of the other, since the action is by a beneficiary, other than the spouse for whose benefit the immunity was created, unless, of course, the tortfeasor spouse would, under a statutory provision, be the sole beneficiary of such an action." 28 A. L. R. (2d) 664.

In the *Kaczorowski* case, Chief Justice Kephart was confronted, as we are here, with the fact that past decisions of his court had announced the rule that a right to recover must exist in the party injured when he died, in order to entitle those named in the act to sue. He analyzes those decisions, and discovers, as in our state, that they involved defenses such as contributory negligence and the statute of limitations. His entire opinion is worth reading, but the essence of his reasoning is contained in the following excerpt:

"Where no action has been commenced by the deceased in his lifetime and an action is brought under the death statute, the recovery is for a loss occasioned to third parties by the death, not for the injuries to the deceased. Pain and suffering and loss of earning power are not recoverable. What is recoverable is the loss of pecuniary benefits which the persons named in the act would have received from the deceased had death not intervened. . . . By the statute there is given an explicit and independent right of action to recover the damages peculiarly suffered by the parties named therein. The legislature has selected certain relationships to the deceased as determining who those parties are, but the damages to be recovered by them must be pecuniary loss to themselves, it bears no relation to the damages recoverable by a decedent who sues for the injury while living. . . . Compensation is being sought therefore for the specific wrong to them. Keeping in mind therefore, the fact that this death statute is an attempt to compensate an independent wrong to the parties named in the statute, we are confronted with the problem as to whether we should withhold the right thus given by subjecting it to the incapacity which may have attended a suit by the daughter because of her relationship to the tort-feasor. There is no reason why the fortuitous circumstance that the

tort-feasor whose act deprived the parent of support happened to be the husband of the person who was injured by that act and who also furnished the support, should be a bar to recovery here. The disability of the wife to sue is personal. It does not inhere in the tort itself as is the case where she is guilty of contributory negligence." (pp. 441-442)

No significance is to be attached to the fact that, when the legislature acted in 1953 (Laws of 1953, chapter 73, § 1, p. 111; RCW (Sup. 1953) 4.20.045) to change the rule that a cause of action for tort or wrongful death does not survive the death of the tort-feasor, no change was made in the rule referred to in the *Ostheller* case.

As before indicated, we do not believe the rule announced in the *Ostheller* case was intended to extend to the kind of a case we have here. If there was such an intention, then the language of that case would have to be regarded as dictum, since the facts of that case did not call for the pronouncement of such a broad rule. It may be further noted that, in 1953, the legislature was dealing with the question of the survival of an action upon the death of a tort-feasor. It was not concerned with the problem of coverage under the wrongful death statute.

With regard to legislative history, it should be noted that the original wrongful death statute enacted in this state specifically limited the right of action to cases where the decedent "might have maintained an action had he lived, against the latter [tort-feasor], for an injury caused by the same act or omission." Laws of 1873, chapter 58, § 656, p. 169; Code of 1881, chapter 61, § 717, p. 149.

Were this language now in the act, there would possibly be some statutory basis for the particular rule of exclusion respondent advocates. See *Wilson v. Brown* (Tex. Civ. App.), 154 S. W. 322; *Demos v. Freemas*, 43 Ohio App. 426, 183 N. E. 395; *Wright v. Davis*, 132 W. Va. 722, 53 S. E. (2d) 335. Even with this kind of language in the act, however, at least two courts have held that a deceased wife's personal representative may sue the husband for her wrongful death.

*Deposit Guaranty Bank & Trust Co. v. Nelson, supra; Rod-
ney v. Staman, supra.*

But this exclusionary language has not been in our act
since this court, in *Graetz v. McKenzie*, 3 Wash. 194, 28 Pac.
331, held that it had been impliedly repealed by § 4, page 4,
Laws of 1875, and § 8, page 36, Code of 1881. The wrongful
death statute has been amended, repealed, and re-enacted
several times since 1881, but the exclusionary language re-
ferred to above has never been restored.

If any legislative history is entitled to be regarded as sig-
nificant, we think it should be this deliberate act in remov-
ing the exclusionary language from the statute.

The judgment is reversed.

GRADY, C. J., MALLERY, SCHWELLENBACH, DONWORTH, FIN-
LEY, WEAVER, and OLSON, JJ., concur.

HILL, J. (dissenting)—Were the issue presented a matter
of first impression in this court, I could follow the reasoning
of the majority and the interpretation it now places upon
RCW 4.20.010 [*cf.* Rem. Rev. Stat., §§ 183, 183-2]. I recog-
nize, too, that the common law is not static, and that as con-
ditions change the common law must change; as James
Russell Lowell put it, "Time makes ancient good uncouth."

But when the issue is the interpretation of a previously
interpreted statute and the statute has not been changed,
the interpretation placed upon it should remain the same.

Appellant's contention here—which the majority now ap-
proves—that our wrongful death statute (RCW 4.20.010)
gives a statutory right of action to beneficiaries of a deced-
ent that deprives the defendant of all defenses except those
relating to the wrong itself, was answered in *Ostheller v.
Spokane & Inland Empire R. Co.* (1919), 107 Wash. 678, 182
Pac. 630, where the court interpreted the same statute (then
Rem. Code, § 183). In an *En Banc* decision, the court as
then constituted, speaking through Judge Parker, said (p.
681):

"We regard it as well settled law that, while this is not
a statute providing for the survival of a cause of action

possessed by the deceased for the recovery for injuries resulting in his death, but is a statute giving to the heirs a new right of action not recognized by the comon law, it nevertheless gives a right of action to the heirs of the deceased which is dependent upon the right the deceased would have to recover for such injuries up to the instant of his death. In other words, dependent upon the right of the injured person to maintain an action for the damage resulting from his injury, had he survived. And this, we think, is the law governing the rights of the heirs, whether the statute expressly so provides or not. It appears that the original Lord Campbell Act did so provide in express terms, as does [sic] several of the state statutes of this country; while our statute, above quoted, those of the several states, and the Federal employers' liability act, do not so provide in express terms. The words 'wrongful act or neglect,' used in statutes of this nature in defining the quality of the act causing the injury and death, it seems to be universally agreed by the courts, mean wrong or neglect as against the deceased; that is, in the sense that the deceased could have recovered damages for the injury resulting in his death."

Referring to the decision in an earlier case construing the same statute, the court said that its conclusion (p. 684)

". . . must manifestly rest upon the theory that statutes of this nature give a right of action to the personal representatives of the deceased only when the deceased might have successfully maintained an action to recover damages for the injury resulting in his death, and that all defenses available to the defendant, if the action had been brought by the person injured, prior to his death, are available to the defendant in an action brought by his personal representatives to recover damages for his death."

Since it seems to be conceded that Anna C. Ottomeier could not have successfully maintained an action against Antone J. Ottomeier or his estate for her injuries had she lived, the trial court, following the interpretation we placed upon the statute in the *Ostheller* case and the cases following it, dismissed the petition in the instant case.

The majority has sought to distinguish the *Ostheller* case or to label it dictum as applied to the facts of this case. There the court obviously undertook to formulate a general rule and, after stating that rule, turned to the facts in the

particular case to see whether they brought the case within that rule, and said (p. 684):

"Manifestly the defense of contributory negligence is as available to the defendant as the defense of settlement and satisfaction by the deceased before his death. *Both equally take away the right of the deceased to successfully maintain an action for his injuries.*" (Italics mine.)

It seems to me that we afford very little help to the bench, the bar, the legislature, and the public in the field of statutory interpretation, when we say that any interpretation is to be limited to the particular state of facts then before the court and that, if a particularly appealing state of facts can be presented, we may change our interpretation.

If in the *Ostheller* case the court failed to grasp the meaning and intent of the legislature, as appellant urges here, there have been opportunities in the intervening seventeen regular sessions and the extraordinary sessions of the legislature to make that meaning and intent clear. Appellant's argument should have been directed to the legislature.

The trial court correctly applied the statute as we have interpreted it, and should be affirmed.