[No. 62699-0-I. Division One. September 7, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. MANUEL STEVEN ABRAHAMSON, *Appellant*.

674

*Lila J. Silverstein* (of *Washington Appellate Project*), for appellant.

*Mark Roe, Interim Prosecuting Attorney,* and *Seth Aaron Fine* and *Edward E. Stemler, Deputies,* for respondent.

¶1 SCHINDLER, J. — Under RCW 37.12.010, the State of Washington assumed criminal and civil jurisdiction over Indians on Indian lands for eight specific areas of law, including the "[o]peration of motor vehicles upon the public streets, alleys, roads and highways." RCW 37.12.010(8). As a member of the Spokane Indian Tribe, Manuel S. Abrahamson asserts the state court did not have jurisdiction to convict him of the crimes of driving while under the influence, attempting to elude, and driving while license revoked, committed on the Tulalip Indian Reservation. Abrahamson claims the State's assumption of jurisdiction over Indians on an Indian reservation for the operation of motor vehicles does not apply to criminal offenses. We

disagree. We hold that under the plain and unambiguous language of RCW 37.12.010 the State assumed jurisdiction over all criminal offenses committed by Indians while operating a motor vehicle on public roads on an Indian reservation, and affirm.

## FACTS

¶2 The facts are not in dispute. On May 4, 2007, a Snohomish County detective was trying to locate Manuel S. Abrahamson to arrest him on outstanding warrants. While the detective was talking to a Tulalip police officer, Abrahamson drove past in a blue GMC. The detective and the Tulalip police officer pursued Abrahamson. During the pursuit Abrahamson was driving approximately 75 miles per hour (mph) in a 35 mph zone. As Abrahamson approached 14th Avenue Northeast, he collided with an oncoming van. A blood alcohol test showed Abrahamson had an alcohol level of 0.09.

¶3 The State charged Abrahamson in Snohomish County Superior Court with (1) attempting to elude a pursuing police vehicle in violation of RCW 46.61.024, (2) driving while under the influence of intoxicating liquor in violation of RCW 46.61.502, and (3) driving while license suspended in the first degree in violation of RCW 46.20.342(1)(a).

¶4 Abrahamson filed a motion to dismiss for lack of jurisdiction. He presented evidence that he is an enrolled member of the Spokane Indian Tribe and argued the court lacked jurisdiction over the charged offenses committed on the Tulalip Indian Reservation. The court denied the motion to dismiss.

¶5 Abrahamson then stipulated to a bench trial on agreed facts. The court found Abrahamson guilty as charged. Based on an offender score of 15, the court sentenced Abrahamson to 29 months with credit for time

served under the Tulalip Tribal Court cause number.[1] Abrahamson appeals.

## ANALYSIS

¶6 Abrahamson contends the court erred in denying his motion to dismiss the criminal charges of driving while under the influence, attempting to elude, and driving with a suspended license. Abrahamson concedes the state court has jurisdiction over the eight specific areas of law set forth in RCW 37.12.010, including operating a motor vehicle on public roads within an Indian reservation. But Abrahamson asserts that the assumption of jurisdiction under RCW 37.12.010(8) for the operation of motor vehicles does not apply to criminal traffic offenses committed by Indians on an Indian reservation.

¶7 Where the location of a crime is not in dispute, jurisdiction is a question of law that we review de novo. *State v. Waters*, 93 Wn. App. 969, 976, 971 P.2d 538 (1999) (citing *State v. L.J.M.*, 129 Wn.2d 386, 396, 918 P.2d 898 (1996)). Statutory interpretation is also a question of law that we review de novo. *State v. Williams*, 158 Wn.2d 904, 908, 148 P.3d 993 (2006); *State v. J.P.*, 149 Wn.2d 444, 449, 69 P.3d 318 (2003).

Chapter 37 RCW, Jurisdiction over Indians and Indian Land

¶8 Congress has plenary authority over Indians with " 'full power to legislate concerning their tribal property' " and abrogate Indian rights, including tribal sovereignty. *In re Estate of Cross*, 126 Wn.2d 43, 46, 891 P.2d 26 (1995) (quoting *Winton v. Amos*, 255 U.S. 373, 391, 41 S. Ct. 342, 65 L. Ed. 684 (1921)); *United States v. Wheeler*, 435 U.S. 313, 323, 98 S. Ct. 1079, 55 L. Ed. 2d 303 (1978). Prior to 1953, the power to adjudicate criminal offenses and civil actions

---

[1] As a sovereign nation, a tribe may exercise concurrent jurisdiction over crimes committed by Indians in Indian country. *United States v. Wheeler*, 435 U.S. 313, 323-24, 98 S. Ct. 1079, 55 L. Ed. 2d 303 (1978).

affecting Indians on Indian reservations was retained exclusively by Congress and the tribes. *Confederated Tribes of Colville Reservation v. Washington*, 938 F.2d 146, 147 (9th Cir. 1991).

¶9 As a condition of statehood, the Congressional Enabling Act of 1889 required territories that wished to become states to include in their constitutions an acknowledgement that Indians and Indian lands remained "under the absolute jurisdiction and control of the Congress of the United States." Act of Feb. 22, 1889, ch. 180, § 4, 25 Stat. 676, 676-77. Accordingly, the Washington State Constitution specifically disclaimed all authority over Indian lands: "Indian lands shall remain under the absolute jurisdiction and control of the congress of the United States." CONST. art. XXVI.

■ ¶10 In 1953, Congress enacted Public Law 280.[2] 67 Stat. 588. Public Law 280 gave states the power to exercise jurisdiction over Indians for civil actions and criminal offenses committed on Indian reservations without the consent of the Indian tribe.[3] *Estate of Cross*, 126 Wn.2d at 47. Public Law 280 provided in pertinent part:

> The consent of the United States is hereby given to any other State *not having jurisdiction* with respect to criminal offenses or civil causes of action, or with respect to both, as provided for in this Act, to assume jurisdiction at such time and in such manner as the people of the State shall, by affirmative legislative action, obligate and bind the State to assumption thereof.

Pub. L. No. 280, § 7, 67 Stat. at 590.

■ ■ ¶11 Congress enacted Public Law 280 to reduce the federal government's economic burden and respond to

---

[2] Codified as amended at 18 U.S.C. § 1162; 25 U.S.C. §§ 1321-1326; 28 U.S.C. § 1360.

[3] Although Congress subsequently passed 25 U.S.C. §§ 1321-1323 (Pub. L. No. 90-284, §§ 401(a), 402(a), 403(a), 82 Stat. 73, 78-79 (1968)), which required consent before all future assumption of civil and criminal jurisdiction over Indians and Indian lands, the act did not make the consent provision retroactive or invalidate any prior assumption of civil or criminal jurisdiction under Public Law 280. *Estate of Cross*, 126 Wn.2d at 47 & n.2.

what it perceived as a "problem of lawlessness on certain Indian reservations, and the absence of adequate tribal institutions for law enforcement." *Bryan v. Itasca County, Minn.*, 426 U.S. 373, 379, 96 S. Ct. 2102, 48 L. Ed. 2d 710 (1976). Accordingly, Congress delegated broad powers over criminal matters to the states. *Confederated Tribes of Colville Reservation*, 938 F.2d at 147 (quoting *Bryan*, 426 U.S. at 379).

¶12 Public Law 280 gave five states[4] the authority to execute criminal and civil jurisdiction over Indians on Indian reservations:

> Each of the States listed in the following table shall have jurisdiction over offenses committed by or against Indians in the areas of Indian country listed . . . to the same extent that such State has jurisdiction over offenses committed elsewhere within the State, and the criminal laws of such State shall have the same force and effect within such Indian country as they have elsewhere within the State.

Pub. L. No. 280, § 2(a), 67 Stat. at 588.

> Each of the States listed in the following table shall have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country listed . . . to the same extent that such State has jurisdiction over other civil causes of action, and those civil laws of such State that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State.

Pub. L. No. 280, § 4(a), 67 Stat. at 589.

¶13 Congress gave other states, including the State of Washington, the authority to assume jurisdiction over criminal offenses and civil causes of action on Indian lands without the consent of the tribes:

---

[4] The five states were California (all Indian country within the State); Minnesota (all Indian country within the State, except the Red Lake Reservation); Nebraska (all Indian country within the State); Oregon (all Indian country within the State, except the Warm Springs Reservation); and Wisconsin (all Indian country within the State, except the Menominee Reservation).

Notwithstanding the provisions of any Enabling Act for the admission of a State, the consent of the United States is hereby given to the people of any State to amend, where necessary, their State constitution or existing statutes, as the case may be, to remove any legal impediment to the assumption of civil and criminal jurisdiction in accordance with the provisions of this Act: *Provided*, That the provisions of this Act shall not become effective with respect to such assumption of jurisdiction by any such State until the people thereof have appropriately amended their State constitution or statutes as the case may be.

Pub. L. No. 280, § 6, 67 Stat. at 590.

The consent of the United States is hereby given to any other State not having jurisdiction with respect to criminal offenses or civil causes of action, or with respect to both, as provided for in this Act, to assume jurisdiction at such time and in such manner as the people of the State shall, by affirmative legislative action, obligate and bind the State to assumption thereof.

Pub. L. No. 280, § 7, 67 Stat. at 590.

¶14 In response to Public Law 280, in 1957 the Washington Legislature passed a law assuming criminal and civil jurisdiction over Indians on Indian lands:

The state of Washington hereby obligates and binds itself to assume, as hereinafter provided, criminal and civil jurisdiction over Indians and Indian territory, reservation, country, and lands within this state in accordance with the consent of the United States given by the act of August 15, 1953 (Public Law 280, 83rd Congress, 1st Session).

LAWS OF 1957, ch. 240, § 1. However, the State's assumption of jurisdiction was conditioned on a resolution from the tribe requesting the State to assume jurisdiction:

Whenever the governor of this state shall receive from the tribal council or other governing body of any Indian tribe, community, band, or group in this state a resolution expressing its desire that its people and lands be subject to the criminal and civil jurisdiction of the state of Washington to the extent authorized by federal law, he shall issue within sixty days a

proclamation to the effect that such jurisdiction shall apply to all Indians and all Indian territory, reservation, country, and lands of the Indian body involved in accordance with the provisions of this chapter: *Provided,* That with respect to the Colville, Spokane, or Yakima tribes or reservations, he shall not issue such proclamation unless the resolution of the tribal council has been ratified by a two-thirds majority of the adult enrolled members of the tribe voting in a referendum called for that purpose.

Former RCW 37.12.020 (Laws of 1957, ch. 240, § 1).

¶15 In 1963 the legislature amended chapter 37.12 RCW. Laws of 1963, ch. 36, §§ 1-7.[5] In the amended version of RCW 37.12.010, the State asserted subject matter jurisdiction over Indians on Indian lands for criminal offenses and civil actions for eight specific areas of law, including the operation of motor vehicles on public roads on an Indian reservation:

**Assumption of criminal and civil jurisdiction by state.** The state of Washington hereby obligates and binds itself to assume criminal and civil jurisdiction over Indians and Indian territory, reservations, country, and lands within this state in accordance with the consent of the United States given by the act of August 15, 1953 (Public Law 280, 83rd Congress, 1st Session), but such assumption of jurisdiction shall not apply to Indians when on their tribal lands or allotted lands within an established Indian reservation and held in trust by the United States or subject to a restriction against alienation imposed by the United States, unless the provisions of RCW 37.12.021 have been invoked, except for the following:

---

[5] The legislature also repealed RCW 37.12.020 and enacted RCW 37.12.021 (Laws of 1963, ch. 36, § 5):

Whenever the governor of this state shall receive from the majority of any tribe or the tribal council or other governing body, duly recognized by the Bureau of Indian Affairs, of any Indian tribe, community, band or group in this state a resolution expressing its desire that its people and lands be subject to the criminal or civil jurisdiction of the state of Washington to the full extent authorized by federal law, he shall issue within sixty days a proclamation to the effect that such jurisdiction shall apply to all Indians and all Indian territory, reservations, country, and lands of the Indian body involved to the same extent that this state exercises civil and criminal jurisdiction or both elsewhere within the state: PROVIDED, That jurisdiction assumed pursuant to this section shall nevertheless be subject to the limitations set forth in RCW 37.12.060.

(1) Compulsory school attendance;

(2) Public assistance;

(3) Domestic relations;

(4) Mental illness;

(5) Juvenile delinquency;

(6) Adoption proceedings;

(7) Dependent children; and

(8) Operation of motor vehicles upon the public streets, alleys, roads and highways: PROVIDED FURTHER, That Indian tribes that petitioned for, were granted and became subject to state jurisdiction pursuant to this chapter on or before March 13, 1963 shall remain subject to state civil and criminal jurisdiction as if chapter 36, Laws of 1963 had not been enacted.

(Reviser's note omitted.) The 1963 amendments also established the effective date for the State's assumption of jurisdiction over criminal offenses:

> Upon March 13, 1963 the state of Washington shall assume jurisdiction over offenses as set forth in RCW 37.12.010 committed by or against Indians in the lands prescribed in RCW 37.12.010 to the same extent that this state has jurisdiction over offenses committed elsewhere within this state, and such criminal laws of this state shall have the same force and effect within such lands as they have elsewhere within this state.

RCW 37.12.030.

■ ¶16 In 1963, all traffic offenses were criminal in nature. In 1979, the legislature amended the traffic offense statutes to decriminalize certain traffic offenses and designate them as traffic infractions. RCW 46.63.010; former RCW 46.63.020 (1979); *Hadley v. Maxwell*, 144 Wn.2d 306, 312, 27 P.3d 600 (2001).

¶17 In *Washington v. Confederated Bands & Tribes of Yakima Indian Nation*, 439 U.S. 463, 499, 99 S. Ct. 740, 58 L. Ed. 2d 740 (1979), the United States Supreme Court upheld the legislature's decision to exercise only a partial assumption of subject matter jurisdiction, i.e., for the eight areas of law set forth in RCW 37.12.010.

¶18 In *Confederated Tribes of Colville Reservation*, 938 F.2d 146, the Ninth Circuit held that Washington lacked jurisdiction to enforce civil traffic infractions by tribal members on the Colville Reservation because Congress did not intend to delegate authority to the states for civil regulatory matters affecting Indian lands. In reaching that decision the court expressly notes the distinction between civil traffic infractions and criminal offenses:

> The Washington legislature in amending its traffic statutes carefully distinguished those offenses like speeding, which henceforth are subject to only civil penalties, from a long list of offenses like reckless driving or driving while intoxicated, which remain criminal.

*Confederated Tribes of Colville Reservation*, 938 F.2d at 148.

RCW 37.12.010(8)

 ¶19 Abrahamson contends that under RCW 37.12.010(8), Washington did not assume jurisdiction over Indians on Indian lands for criminal traffic offenses such as driving while under the influence or attempting to elude.

¶20 Our primary responsibility in interpreting a statute is to ascertain and give effect to the legislative intent. *J.P.*, 149 Wn.2d at 450. To determine legislative intent, we first look to the language of the statute. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). If the plain language of the statute is clear and unambiguous, we must give effect to the language as an expression of legislative intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). We must also construe statutes so that all the language used is given effect, with no portion rendered meaningless or superfluous. *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996). In deciding whether a plain meaning can be ascertained, it is appropriate to examine the particular provision of a statute, as well as other statutory provisions. *Campbell & Gwinn*, 146 Wn.2d at 10-12. It is well established that an unambiguous statute

is not subject to the rules of statutory construction. *State v. Watson*, 146 Wn.2d 947, 955, 51 P.3d 66 (2002).

¶21 Because we conclude the plain language of RCW 37.12.010 is not ambiguous, there is no need to look beyond the language of the statute.[6]

¶22 RCW 37.12.010 clearly states that the "state of Washington hereby obligates and binds itself to assume *criminal and civil jurisdiction* over Indians and Indian territory, reservations, country, and lands within this state in accordance with . . . Public Law 280."[7] The statute then provides that "*such assumption of jurisdiction* shall not apply to Indians when on their tribal lands or allotted lands within an established Indian reservation" without a resolution "*except for the following*: . . . [o]peration of motor vehicles upon the public streets, alleys, roads and highways."[8] The phrase "such assumption of jurisdiction" refers to the State's unequivocal assertion of "criminal and civil jurisdiction" over Indians on Indian reservations for the eight specific areas of law set forth in RCW 37.12.010 regardless of whether the tribes consented to jurisdiction. Under the plain language of the statute, we conclude the State assumed jurisdiction over all criminal offenses committed by Indians while operating a motor vehicle on public roads on Indian lands.

¶23 The language of RCW 37.12.030 also supports the conclusion that the State assumed jurisdiction over criminal offenses for the eight areas of law set forth in RCW 37.12.010. RCW 37.12.030 provides in pertinent part:

> [T]he state of Washington *shall assume jurisdiction over offenses as set forth in RCW 37.12.010* committed by or against Indians in the lands prescribed in RCW 37.12.010 to the same extent that this state has jurisdiction over offenses committed

---

[6] Accordingly, we need not address the rule of statutory construction relied on by Abrahamson, noscitur a sociis. *Cerrillo v. Esparza*, 158 Wn.2d 194, 201, 142 P.3d 155 (2006).

[7] (Emphasis added.)

[8] RCW 37.12.010(8) (emphasis added).

elsewhere within this state, and such criminal laws of this state shall have the same force and effect within such lands as they have elsewhere within this State.[9]

¶24 We hold that under the plain language of RCW 37.12.010, the State assumed full criminal jurisdiction over Indians and Indian land with respect to the eight specified areas of law, including the "[o]peration of motor vehicles on the public streets, alleys, roads and highways." RCW 37.12.010(8).

▌▌ ¶25 The language Abrahamson relies on in *State v. Cooper*, 130 Wn.2d 770, 928 P.2d 406 (1996), to argue that the State did not assume criminal jurisdiction over the operation of motor vehicles is taken out of context. Language used by the court must be considered in the context of the facts and issues of the particular case before the court. *Johnson v. Ottomeier*, 45 Wn.2d 419, 421, 275 P.2d 723 (1954).

¶26 In *Cooper*, a Nooksack Indian was prosecuted in state court for child molestation. The crime occurred on land held in trust by the United States as an Indian allotment. The court held that the superior court did not have jurisdiction under RCW 37.12.010 because the crime was committed outside the boundaries of an established Indian reservation. *Cooper*, 130 Wn.2d at 780. In reaching that conclusion, the court addressed the 1963 amendment of RCW 37.12.010 and accurately stated that the "effect of this statute was to assume jurisdiction over all Indian country for purposes of the eight enumerated categories of law." *Cooper*, 130 Wn.2d at 774. The opinion then goes on to state that, with regard to the crime of child molestation, "[c]riminal jurisdiction was not one of the eight categories of law in which the State assumed jurisdiction over all Indian country." *Cooper*, 130 Wn.2d at 774 (emphasis omitted). Abrahamson argues this language means the State did not assume jurisdiction over criminal offenses for the eight specific subject matter areas set forth in RCW 37.12.010. We disagree. In context, the language Abrahamson relies on

---

9 (Emphasis added.)

in *Cooper* actually refers to jurisdiction over criminal offenses *other* than the eight subject areas where the State has full jurisdiction over Indians on Indian lands.

¶27 As in *Cooper*, in *State v. Pink*, 144 Wn. App. 945, 947-48, 185 P.3d 634 (2008), we held that the State did not have jurisdiction over an Indian on an Indian reservation for the unlawful possession of a firearm. But in reaching that conclusion we also emphasized that RCW 37.12.010(8) "gives the State jurisdiction over crimes concerning the operation of motor vehicles." *Pink*, 144 Wn. App. at 956.

¶28 We hold that under the plain language of RCW 37.12.010 the superior court had jurisdiction over the criminal driving offenses committed by Abrahamson on public roads on the Tulalip Indian Reservation, and affirm.

LEACH, A.C.J., and ELLINGTON, J., concur.